(May 31, 1923.)

# L. B. YADEN and ELEANOR B. YADEN, Appellants, v. GEM IRRIGATION DISTRICT, a Corporation, Respondent.

[216 Pac. 250.]

IRRIGATION AND WATER RIGHTS—SURPLUS WATERS—DEDICATION OF WATER BY USE—IRRIGATION DISTRICTS—OFFICERS AND DIRECTORS —ULTRA VIRES ACTS—ANNEXATION.

1. Where surplus water is delivered to a land owner outside of an irrigation district, when the same is not required for lands within such district, such land owner does not acquire a vested right to such waters within the meaning of sec. 4, art. 15 of the constitution or C. S., sec. 5638, and is not entitled to the delivery of such water when the same is required for the irrigation of lands within the district.

2. An irrigation district, organized under the provisions of the statute, acquiring an irrigation system, is under no legal obligation to continue to deliver water to persons who have theretofore used the same, but who have not acquired a vested right to the use of such water.

3. Irrigation districts are *quasi*-public or municipal corporations, and as such have only such powers as are given to them by statute, or such as are necessarily implied.

4. Under the provisions of C. S., sec. 4350, the legal title to all property acquired by an irrigation district by operation of law vests immediately in the district and is held in trust for, dedicated to and set apart to the use and purposes provided by law.

5. The powers of the directors and officers of an irrigation district are prescribed by C. S., secs. 4346 and 4355, and any act done in excess of the express or implied provisions of the statute by such directors or officers is *ultra vires*.

6. Owners of lands lying outside of the boundaries of an irrigation district may become entitled to the use of waters or acquire an interest in the system of the district by annexation as provided by C. S., secs. 4411 to 4421, inclusive.

Publisher's Note.

1. Priority of right to use water of irrigation company, see note in Ann. Cas. 1913D, 625.

APPEAL from the District Court of the Third Judicial District, for Owyhee County. Hon. Charles F. Reddoch, Judge.

*Mandamus* to compel delivery of water. Writ denied. Judgment for defendant. *Affirmed.*

William Healy, for Appellants.

Where water has once been used for agricultural purposes under a sale, rental or distribution, the annual use of the same when needed for the irrigation of the land to which it has been applied cannot thereafter be denied. (Art. 15, secs. 1, 4, Const.; C. S., secs. 5556, 5638; *Hard v. Boise City Co.,* 9 Ida. 589, 76 Pac. 331, 65 L. R. A. 407; *Gerber v. Nampa & Meridian Irr. Dist.,* 16 Ida. 1, 100 Pac. 80; Id., 19 Ida. 765, 116 Pac. 104; *Niday v. Barker,* 16 Ida. 73, 101 Pac. 254; *Russell v. Irish,* 20 Ida. 194, 118 Pac. 501; *Knowles v. New Sweden Irr. Dist.,* 16 Ida. 217, 101 Pac. 81.)

Priority of right of distributees under a canal is governed by priority of settlement and improvement of land and application of water to beneficial use. (Sec. 5, art. 15, Const.; *Gerber v. Nampa & Meridian Irr. Dist., supra; Mellen v. Great Western Beet Sugar Co.,* 21 Ida. 353, Ann. Cas. 1913D, 621, 122 Pac. 30; *State v. Twin Falls Canal Co.,* 30 Ida. 41, 166 Pac. 220; *Brose v. Nampa & Meridian Irr. Dist.,* 24 Ida. 116, 132 Pac. 799.)

Irrigation district law does not prohibit the distribution of water to land outside the district. (*Settlers' Irr. Dist. v. Settlers' Canal Co.,* 14 Ida. 504, 94 Pac. 829.)

Irrigation district in the administration of its system exercises proprietary rather than governmental powers. (*City of Nampa v. Nampa & Meridian Irr. Dist.,* 19 Ida. 779, 115 Pac. 979; *Noon v. Gem Irr. Dist.,* 205 Fed. 402.)

Plaintiffs' land may be brought into the district and subjected to same burdens as all other lands. (*Indian Cove Irr. Dist. v. Priedeaux,* 25 Ida. 112, Ann. Cas. 1916A, 1218,

136 Pac. 613; *Nampa & Meridian Irr. Dist. v. Briggs,* 27 Ida. 84, 147 Pac. 75.)

Thompson & Bicknell and John C. Rice, for Respondent.

An irrigation district organized under the laws of the state is a public or *quasi*-public or municipal corporation. (*Hurtle v. Ball,* 9 Ida. 193, 72 Pac. 953; *City of Nampa v. Nampa & Meridian Irr. Dist.,* 19 Ida. 779, 115 Pac. 979; *Colburn v. Wilson,* 23 Ida. 337, 130 Pac. 381; *Pioneer Irr. Dist. v. Walker,* 20 Ida. 605, 119 Pac. 304; *Gem Irr. Dist. v. Van Dusen,* 31 Ida. 779, 176 Pac. 887; *In re Madera Irr. Dist.,* 92 Cal. 296, 27 Am. St. 106, 28 Pac. 272, 14 L. R. A. 755.)

The officers of an irrigation district are creatures of the statutes and have no powers other than those expressly given by law and those implied as necessary for the execution of the powers expressly given. (*Stimson v. Allesandrow Irr. Dist.* (Cal.), 67 Pac. 496; *Evans v. Swendsen,* 34 Ida. 290, 200 Pac. 136; *Kootenai County v. State Board of Equalization,* 31 Ida. 155, 169 Pac. 935; *State v. Deschutes Land Co.,* 64 Or. 167, 129 Pac. 764; *Olmstead v. Carter,* 34 Ida. 276, 200 Pac. 134; C. S., sec. 4350.)

The extent of the powers granted to the directors of an irrigation district is to take all necessary measures within the law to acquire and construct the necessary irrigation works that sufficient water may be furnished to each land owner in the district for irrigation purposes. (C. S., sec. 4355.)

The officials of the district are without power under the law to make any use of its works and water rights for the benefit of lands outside of its boundaries and upon which the cost of the works has not been apportioned. Such a breach of trust if successful would result in taking property from the real owners thereof without due process of law. (*Jenison v. Redfield,* 149 Cal. 500, 87 Pac. 63.)

Furnishing water to lands outside of the district constitutes a breach of trust by the officers of the district under

the law. Appellants were bound to know that they had no legal right to receive water from the district. They acquired no legal right based upon a breach of trust of which they had notice. (*Jenison v. Redfield, supra;* Wiel on Water Rights, 3d ed., sec. 1357; *Merchants' Nat. Bank v. Escondido Irr. Dist.*, 144 Cal. 329, 77 Pac. 937.)

An irrigation district may acquire works burdened with the necessity of supplying water, the right to which has already been acquired, outside the boundaries of the district, but otherwise have no power under the law to furnish water to lands outside its boundaries. (*Settlers' Irr. Dist. v. Settlers' Canal Co.*, 14 Ida. 504, 94 Pac. 829; *Gerber v. Nampa & Meridian Irr. Dist.*, 19 Ida. 765, 116 Pac. 104; *Niday v. Barker*, 16 Ida. 73, 101 Pac. 254; *Nampa & Meridian Irr. Dist. v. Briggs*, 27 Ida. 84, 147 Pac. 75.)

Appellants could only obtain a legal right to share in the waters of the Gem Irrigation District by having their lands annexed to the district and subjecting them to their proportionate share of the cost of the works and of the maintenance charges of the district under the provisions of the statutes. (C. S., secs. 4411, 4413, 4415.)

Any temporary deliveries of water at times when the water users are not using it cannot be turned into a perpetual water right by the person to whom such deliveries are made. (*Gerber v. Nampa & Meridian Irr. Dist.*, 16 Ida. 1, 100 Pac. 80.)

BUDGE, C. J.—This action was brought to obtain a writ of mandate to compel respondent to deliver water to appellant's land and to recover damages for loss of crops as a result of respondent's failure and refusal so to do. The cause was tried to the court and judgment was entered in favor of respondent from which judgment this appeal is prosecuted.

Throughout this opinion the use of the word "appellant" will be taken as referring to Eleanor B. Yaden.

The facts are substantially as follows: Respondent district was organized in 1909. Its irrigation works consist of

a pumping plant on Snake River, from which stream the district diverts water into three main canals. One of these canals, known as "A" Canal, extends in a westerly direction and is approximately 25 miles in length. Beyond the westerly termination of this canal is a stream called Succor Creek, which flows in a northeasterly direction into Snake River. To the northwest of this stream lie certain lands which were included in the district as originally organized, but subsequently withdrawn. In 1912 an assessment of benefits was made and the cost of acquiring the works was apportioned and confirmed by court decree. At that time no lateral had been constructed to irrigate the lands lying beyond Succor Creek. In 1913 appellant made a desert entry of lands, all of which except ten acres lie on the northwest side of Succor Creek and without the boundary lines of respondent district. In 1913 and 1914 respondent district completed the construction of a lateral across and beyond Succor Creek and below appellant's land. This lateral is known as A–10A and is a branch of the "A" Canal. It crosses Succor Creek by means of a buried syphon. This syphon was constructed in 1913. From this lateral about fifty acres of appellant's land is susceptible of irrigation. The lateral beyond the syphon was built the following year and after appellant had perfected her entry. It would seem that this lateral and syphon were constructed for the purpose of irrigating lands that were then, but not now, within the district, and thereby a portion of the Yaden land became susceptible of irrigation from that source. From 1914 to 1917 inclusive, water was delivered through this lateral and syphon, a portion of which was used upon appellant's land. In 1917 appellant paid to respondent district the required charges for the delivery of water to land then under cultivation. In 1918 respondent district demanded and received from appellant a note secured by a crop mortgage covering the maintenance assessment for that year. During the early irrigation season of 1918 the syphon across Succor Creek was in such condition that water could not be conveyed through the same without damage to abutting land owners.

In that year the directors of respondent district refused to repair the syphon and discontinued the delivery of water to appellant.

Upon oral argument it was conceded that appellant was entitled to receive water for the ten acres within respondent's present boundaries. At and for a period subsequent to the time of the construction of the "A" Canal and the A–10A lateral there was more than sufficient water to properly irrigate all of the lands within the boundaries of the district then in cultivation, and this condition continued until 1919. In the years 1918 to 1920 additional lands within the district were brought under cultivation. The capacity of the "A" Canal was found to be insufficient to convey the amount of water necessary to properly irrigate lands then under cultivation within the district and in 1920 the canal was enlarged and an additional pump installed for the purpose of providing additional water to such landowners within the district.

It is conceded that prior to such increased reclamation and cultivation water was furnished for use on part of appellant's land.

The court found that the water which appellant used was conveyed through works which belonged to the owners of land within the district which, at that time, they did not require for use upon their lands, but for the past three years they had used and required the same for use and that appellant's use was only temporary during the time the lands entitled to said water did not require the same. In our opinion there was sufficient competent evidence to support this finding.

Appellant's right to delivery of water was denied by the court upon the theory that the cost of the instalation of the system had been assessed against the lands within the district; that appellant's land not being within the district and not being assessed or subject to assessment for the purchase price and cost of instalation of the system she was not entitled to receive water therefrom and respondent district was not required to furnish water to any lands outside of the

37 Idaho.—20

district; that all waters owned by the district were held in trust for the benefit of the owners of the land within its boundaries, such owners being entitled, as their lands were brought under cultivation, to the full capacity of the system.

It is insisted by appellant that the water having once been applied to her land and used for agricultural purposes, it was such a dedication and distribution of waters to a beneficial use that she could not thereafter be deprived of. In support of this contention reliance is placed upon art. 15, secs. 1 and 4 of the constitution, and C. S., secs. 5638 and 5556.

Sec. 1, art. 15, *supra,* provides as follows:

"The use of all waters now appropriated, or that may hereafter be appropriated for sale, rental or distribution; also of all water originally appropriated for private use, but which after such appropriation has heretofore been, or may hereafter be sold, rented or distributed, is hereby declared to be a public use, and subject to the regulation and control of the state in the manner prescribed by law."

Sec. 4, art. 15, *supra,* provides as follows:

"Whenever any waters have been, or shall be, appropriated or used for agricultural purposes, under a sale, rental or distribution thereof, such sale, rental or distribution shall be deemed an exclusive dedication to such use; and whenever such waters so dedicated shall have once been sold, rented or distributed to any person who has settled upon or improved land for agricultural purposes with the view of receiving the benefit of such water under such dedication, such person, his heirs, executors, administrators, successors, or assigns, shall not thereafter, without his consent, be deprived of the annual use of the same, when needed for domestic purposes, or to irrigate the land so settled upon or improved, upon payment therefor, and compliance with such equitable terms and conditions as to the quantity used and times of use, as may be prescribed by law."

C. S., sec. 5638, is a substantial re-enactment of sec. 4, art. 15, *supra.*

C. S., sec. 5556, *inter alia,* provides that:

". . . . the right to the use of any of the public waters which have heretofore been or may hereafter be allotted or beneficially applied, shall not be considered as being a property right in itself, but such right shall become the complement of, or one of the appurtenances of, the land or other thing to which, through necessity, said water is being applied; and the right to continue the use of any such water shall never be denied or prevented from any other cause than the failure on the part of the user thereof to pay the ordinary charges or assessments which may be made to cover the expenses for the delivery of such water."

The provisions of the constitution and the sections of the statutes cited and relied upon by appellant have peculiar application to persons or corporations organized for the purpose of appropriating water for sale, rental, or distribution and have no application to an irrigation district, except as hereinafter noted.

It is true that whenever an irrigation district, organized under the provisions of the statute, acquires an irrigation system through which waters have theretofore been delivered and applied to a beneficial use on lands outside or within the boundaries of the district, it is burdened with the obligation to continue such delivery. Appellant calls attention to the case of *Gerber v. Nampa & Meridian Irr. Dist.*, 19 Ida. 765, 116 Pac. 104. That case does not bear out appellant's theory. In that case the plaintiff was the owner of land within the exterior limits of the defendant district which purchased from the Boise City Irrigation & Land Company a canal locally known as the Ridenbaugh Canal. During 1904, 1905 and 1906, the predecessor in interest to the plaintiff took water for the land now owned by plaintiff, from two taps of the Ridenbaugh Canal. The plaintiff in that case had acquired a vested right to the use of certain water from the predecessor of the irrigation district. When the district purchased the canal system from the Boise City Irrigation & Land Company, such system was burdened with the duty to deliver such water to the Gerber lands and this court held, in effect, that, having purchased the system bur-

dened with the duty to deliver such water, the right to the
use of such water could not be denied. To the same effect
see *Settlers' Irr. Dist. v. Settlers' Canal Co., Ltd.*, 14 Ida.
504, 94 Pac. 829; *Niday v. Barker*, 16 Ida. 73, 101 Pac. 254;
*Nampa & Meridian Irr. Dist. v. Briggs*, 27 Ida. 84, 147 Pac.
75.

An irrigation district acquiring a system which had there-
tofore furnished water to settlers outside of the district who
had a vested right thereto is compelled to continue to deliver
such water. But an irrigation district acquiring a system
which only furnishes water to settlers within the district
cannot be compelled thereafter to furnish water to settlers
outside of the district.

Irrigation districts are creatures of the statutes. They
are *quasi*-public or municipal corporations, and as such have
only such power as is given to them by statute, or such as
is necessarily implied. (*Evans v. Swendsen*, 34 Ida. 290,
200 Pac. 136; *Kootenai County v. State Board of Equaliza-
tion*, 31 Ida. 155, 169 Pac. 935; *Olmstead v. Carter*, 34 Ida.
276, 200 Pac. 134; *State v. Deschutes Land Co.*, 64 Or. 167,
129 Pac. 764.)

Under the provisions of C. S., sec. 4350, the legal title to
all property acquired by the district by operation of law
vests immediately in the district and is held in trust for,
dedicated to and set apart to the use and purposes pro-
vided by law. Under the provisions of C. S., secs. 4346 and
4355, the power of the directors or other officers of an irriga-
tion district is limited and any act done in excess of the ex-
press or implied provisions of the statute by such directors
or other officers is *ultra vires*. However, the foregoing pro-
visions of the statutes do not prohibit the delivery of water
to users outside of the district when the same is not needed
by users within the district. Such delivery of water would
not be a dedication under the provisions of the constitution
or the statutes heretofore referred to. (Const., art. 15,
secs. 1 and 4; C. S., secs. 5638 and 5556.) The land owners
within the district are obligated to the extent of the cost of
maintenance of the system and for the payment of the same.

The appropriation and diversion of waters by the district, through its officers, or the purchase of a system constructed in whole or in part by its funds, becomes the property of the district and is held in trust for the land owners within it and no burden can be imposed upon it for the delivery or maintenance of canals or laterals for the delivery of water beyond the boundaries of the district, and no contract made by the directors of a district to deliver water beyond its boundaries is a liability for which the district can be held. The ultimate purpose of a district's organization, under the provisions of the statutes of this state, is the improvement, by irrigation, of lands within the district. The purpose of its organization is not rental, sale or distribution of water. It is authorized to acquire the right to the use of water for the purpose of delivery to settlers within the district. To bond the lands of the settlers within the district to acquire the right to the use of water and then to deprive them of such right in order that it may be furnished to lands without the district would clearly be taking property of the land owners within the district without due process of law. (*Jenison v. Redfield,* 149 Cal. 500, 87 Pac. 63; *Merchants' Nat. Bank of San Diego v. Escondido Irr. Dist.,* 144 Cal. 329, 77 Pac. 937.)

Appellant concedes that she is not an appropriator of any of the waters diverted and distributed by means of the system owned by respondent district; that her lands are not and cannot be assessed for the purpose of paying off the indebtedness of the district or for the purpose of maintenance, but that she is a renter or distributee of water available for distribution from the system, and, as such, having once received the water and applied it to a beneficial use, this right cannot be denied her, although the system of respondent district is limited in its capacity to furnish water to land owners within its boundaries.

Appellant further seeks to reinforce her right to the use of waters from the distributing system of respondent upon the theory that she was applying waters to her lands prior to the cultivation and application of the waters of the sys-

tem by later land owners within the district. There is no merit in this contention. The waters were originally appropriated and the system constructed to apply water to land owners within the boundaries of the district and all persons dealing with the directors or officers of the district are bound to take notice of the various enactments conferring authority upon the directors or officers of the district and the limitation of their powers. The delivery of water by the directors or officers of an irrigation district to exterior lands would simply be an act *ultra vires*, except in such cases where the district acquired the system burdened with the duty to deliver water without its boundaries, or in case of surplus of water.

Officers of an irrigation district are public officers and a contract made with a public officer in excess of the provisions of the statute authorizing the contract is void, so far as it departs from or exceeds the terms of the law. (*State v. Deschutes Land Co.*, 64 Or. 167, 129 Pac. 764.)

C. S., secs. 4411 to 4421, inclusive, provide the only method by which owners of lands lying outside of the boundaries of an irrigation district may become entitled to the use of waters or acquire an interest in the system of the district, and that is by annexation.

From what has been said it follows that the writ of mandate should not issue. The judgment of the trial court is affirmed, and it is so ordered. Costs are awarded to respondent.

William A. Lee and Wm. E. Lee, JJ., concur.