459 P.2d 1009

O. T. JONES and Ruby I. Jones, husband and wife, and William A. Jones, Plaintiffs-Appellants,

v.

BIG LOST RIVER IRRIGATION DISTRICT, a corporation, Defendant-Respondent.

No. 10170.

Supreme Court of Idaho.

Oct. 17, 1969.

Albaugh, Bloem, Smith & Pike, Idaho Falls, for appellants.

Kerr & Williams, Blackfoot, Merrill & Merrill, Pocatello, for respondent.

DONALDSON, Justice.

This appeal is from a final judgment entered against the appellants (plaintiffs) in an action for damages to appellants' crops in 1959 based upon the alleged failure of the respondent (defendant) irrigation district to deliver water to the appellants. The action was tried to the court sitting without a jury.

The appellants' property in question is located entirely outside the boundary of the respondent irrigation district, lying some four to five miles to the south. The property is located at the end of the Arco Canal. The Arco Canal is about five miles long and about one-half of its length is outside the district and about one-half is inside. The evidence reveals that although the respondent is primarily an irrigation district

it does have some additional duties which cause it to function as a ditch company.

The appellants had the following decreed natural flow water rights to the Big Lost River: 32 miner's inches with a priority of May 1, 1895; 28.29 miner's inches with a priority of June 1, 1890; and 66 miner's inches with a priority of June 2, 1901. These three water rights were originally decreed to other lands but appellants had purchased these rights. In 1955 the appellants by application to the Commissioner of Reclamation transferred two of the three water rights, the 1885 and 1901 rights, from the land to which originally appurtenant to the land involved in this law suit. As to the 1890 rights the appellants had applied for transfer of them but a protest had been filed and the action was still pending at the time of trial. The appellants also had accumulated the right to 3,875 inches (or 155 acre feet) of storage water in the Mackay Reservoir which is controlled by the respondent irrigation district.

Through the years prior to 1959 and during 1959, the appellants' lands lying outside the irrigation district were assessed operation and maintenance charges by the respondent district for the use of the Arco Canal within the district. 1959 was a short water year and all those with storage rights on the Big Lost River were using them. Appellants made written demand for their storage water but the district refused to deliver any to the appellants. The gravamen of appellants' claim is that as a result of the respondent's refusal to allow the appellants to have their share of the storage water and the failure to deliver to the appellants their decreed water from the Big Lost River that appellants suffered a loss of $27,557.50 with respect to their crops.

The evidence indicates that the appellants owned property situated within the irrigation district as well as property situated without the irrigation district and had the use of their storage water on the property situated within. A Mr. Walker owned land above and adjoining appellants' land outside the district. Across the joint ditch going to Walker's land and to the appellants' land a dirt dam was built stopping the flow of water to appellants' land. This dam was built outside of the respondent district.

The only questions presented by this appeal are whether certain findings of fact are supported by substantial and competent evidence and whether the conclusions of law are correct.

Appellants claim that the court erred in its amended finding of fact No. 13 in which it stated the district did not permit or authorize the diversion of storage water at points outside the district. Appellants also claim the court erred as to part of finding of fact No. 18:

"18. That during the days plaintiffs' decrees were on during the irrigation season of 1959, the plaintiffs' decreed flowage rights from the Big Lost River were diverted into the head of the Arco Canal and, subject to a proportionate share of the transit losses, were delivered to the boundary of the defendant district."

Appellants claim that the court erred in that portion of finding of fact No. 18 which reads, "and, subject to a proportionate share of the transit losses, were delivered to the boundary of the respondent district."

Appellants claim that the court erred in its conclusion of law No. 1 wherein it held that the district had no duty in 1959 to deliver storage water to the lands of the appellants outside the district. Appellants further claim that the court erred in its conclusion of law No. 6 in which it held that the respondent did not violate any duty in the failure to deliver any water.

In regard to the findings of fact in question, a review of the record in the case reveals that there was conflicting evidence as to whether or not the irrigation district permitted or authorized the diversion of storage water at points outside the district. However, there is substantial and competent evidence to show that no permission or authorization was given for the diversion of storage water to points outside the district.

As to whether appellants' decreed flowage rights were delivered to the boundary of the respondent irrigation district, it should be noted first that this was not the responsibility of the respondent irrigation district but was the responsibility and obligation of the water master. The duly elected water master of water distict No. 27 was responsible to and worked for the Department of Reclamation of the State of Idaho. He was not an employee of the respondent irrigation district. The duties of a water master are to determine decrees, regulate flow of streams and to transfer the water of decreed rights to the appropriate diversion points, I.C. § 42–607. The water master is not the agent of the water company or water user, but is a ministerial officer. Bailey v. Idaho Irr. Co., 39 Idaho 354, 227 P. 1055 (1924). His activities are not those of the respondent irrigation district. In any event it appears from the record that Mr. DeVon Jensen was the water master and that he testified as well as the ditch rider to the effect that the appellants received all of their decreed rights and had use of all of the storage rights within the district. Appellants testified that they did not receive the water on their property. However, there was uncontroverted testimony that a dirt dam had been built on Mr. Walker's property which stopped the flow of all water to appellants' land. Since the dam was situated outside the district the respondent was not responsible for it, nor had it authority to remove it.

■ It has long been the settled rule of this court that where the findings of the trial court are supported by substantial and competent, though conflicting, evidence, such findings will not be disturbed on appeal. Riley v. Larson, 91 Idaho 831, 432 P.2d 775 (1967); Meridian Bowling Lanes Inc. v. Brown, 90 Idaho 403, 412 P.2d 586 (1966). The trial judge is the arbiter of conflicting evidence; his determination of the weight, credibility, inferences and implications thereof is not to be supplanted by this court's impressions or conclusions from the written record. Meridian Bowl-ing Lanes v. Brown, *supra*. Findings of fact made by the district court shall not be set aside unless clearly erroneous. I.R.C.P. 52(a).

■ As to the conclusions of law in question, we find no error. The respondent had no duty or obligation to deliver storage water outside the boundaries of the district. In fact under the holdings of this court it could not have done so. In the case of Yaden v. Gem Irrigation District, 37 Idaho 300, 216 P. 250 (1923); this court held that the waters owned by an irrigation district must be used within the irrigation district itself and cannot be used outside the district; that the only method that owners of land lying outside of the boundaries of an irrigation district may be entitled to use the waters or to acquire an interest in the district's water is by annexation to the district itself. That any agreement, contract or action of the officers of the irrigation district contrary would be an *ultra vires* act. In the case of Jensen v. Boise-Kuna Irr. Dist., 75 Idaho 133, at 141, 269 P.2d 755, 760–761 (1954), the same basic theory was developed by this court as follows:

"As held by this court, and as expressly provided by § 43–316, I.C., the title to all property acquired by an irrigation district, including its water rights, is vested in the district and held by the district in trust for, and dedicated and set apart to, the uses and purposes set forth in the law. Yaden v. Gem Irr. Dist., 37 Idaho 300, 216 P. 250; Colburn v. Wilson, 23 Idaho 337, 130 P. 381.

"It follows that any water owned by the district and thus dedicated to the irrigation of lands within the district, cannot be supplied to lands outside the district so long as it is needed for the proper irrigation of lands within the district. The officers of the district have no power to contract for the delivery or supplying of such water for use outside the district. Any contract attempting to create or impose an obli-

gation on the district to supply or make available any such water for any such purpose is ultra vires and void. It also follows that any attempt by the directors of the district to create such an obligation cannot be made the basis of estoppel against the district. Otherwise, the will and purpose of the legislature, and the public policy established by its dedication of such water to the lands within the district, could be defeated by ill-advised contracts of the directors. The court was, therefore, in error in holding that the defendant is estopped to deny that the water to be made available to the plaintiffs was all surplus and waste and not needed by, or available to, the district for irrigation of any of the lands therein. The error, however, is technical only, because the finding in which it occurs refers only to seepage and waste water accumulating in Thomason Lake, all of which the record shows to be actually surplus and waste, and not available for irrigation of the district lands. The water used for irrigation of the 170 acres within the district, heretofore mentioned, is taken out of the drainage ditch before it reaches Thomason Lake and hence is not to be confused with the waters referred to in the finding. There was no occasion to invoke an estoppel as to the waters referred to in the finding, because the defendant is not claiming such to be other than surplus and waste. Supporting our conclusion that a contract, which would obligate an irrigation district to deliver any dedicated water for use outside the district is ultra vires and void, and that estoppel cannot be invoked in aid of such a contract, are the following authorities: Jenison v. Redfield, 149 Cal. 500, 87 P. 62; Maclay v. Missoula Irr. Dist., 90 Mont. 344, 3 P.2d 286; Koch v. Colvin, 110 Mont. 594, 105 P.2d 334; School Dist. No. 8 in Twin Falls County v. Twin Falls, etc., Ins. Co., 30 Idaho 400, 164 P. 1174;

Deer Creek Highway Dist. v. Doumecq Highway Dist., 37 Idaho 601, 218 P. 371; Lloyd Crystal Post No. 20, The American Legion v. Jefferson County, 72 Idaho 158, 237 P.2d 348; Worlton v. Davis, 73 Idaho 217, 249 P.2d 810; State v. Northwest Magnesite Co., 28 Wash.2d 1, 182 P.2d 643; 31 C.J.S., Estoppel, § 141."

Appellants assert that since the irrigation district has functioned as a mutual ditch company and delivered water outside the boundaries of the district for many years, the district is therefore estopped by laches from discontinuing such deliveries. Appellants rely on Johnson v. Strong Arm Reservoir Irrigation District, 82 Idaho 478, 356 P.2d 67 (1960), and Hillcrest Irrigation District v. Nampa and Meridian Irrigation District, 57 Idaho 403, 66 P.2d 115 (1937) as authorities for this proposition. However in both those cases the period of time involved during which the irrigation district functioned as a mutual ditch company was over 20 years. In the case at bar the appellants for three and one-half years previous to 1959 made use of water which ran down the Arco Canal which was diverted from the Big Lost River. These waters were flood waters and were available to appellants as such and not dependent upon any decrees or water rights. The doctrine of estoppel does not apply to use of surplus or waste water. Jensen v. Boise-Kuna Irr. Dist., *supra*. Also no appropriator can compel any other appropriator to continue the waste of water so that he can benefit. Application of Boyer, 73 Idaho 152, 248 P.2d 540 (1952). We therefore cannot agree with the appellants' contention that the short three and one-half year period during which appellants made use of these run-off waters entitled them to assert an estoppel by laches.

The findings of fact and conclusions of law made by the district court are affirmed.

Judgment affirmed and costs to respondent.

McFADDEN, C. J., McQUADE and SHEPARD, JJ., and SCOGGIN, D. J., concur.