[Civ. No. 4474.  Third Appellate District.—February 8, 1932.]

SECURITY TRUST AND SAVINGS BANK (a Corporation), Appellant, v. CITY OF LOS ANGELES, Respondent.

Clarke & Bowker and Hewitt, McCormick & Crump for Appellant.

Erwin P. Werner, City Attorney, and W. B. Mathews and George T. Warren, Deputies City Attorney, for Respondent.

MILLER, J., *pro tem.*—This is an appeal from a judgment in favor of respondent, rendered in an action prosecuted by appellant to recover certain taxes paid by appellant under protest. The tax was levied and assessed against appellant's lands lying within Municipal Improvement District Number 27 in the City of Los Angeles, which district was created in pursuance of an act of the legislature (Stats. 1915, p. 99), and under Ordinance No. 49358 (New Series), passed July 25, 1924, and approved July 28, 1924. An election was thereafter duly called in the territory embraced in the boundaries of said district. The ordinance calling said election provided for the submission to the electors of the district the proposition of issuing bonds of said district for the purpose of acquiring and constructing works for distributing a supply of water to the inhabitants of said district, and acquiring lands, rights of way, structures, pipe-lines, apparatus, etc., and provided for a sale of such bonds and for the levy of a tax for the payment thereof. Such bonds were duly issued in the sum of $776,000, bearing interest at the rate of five and one-half per cent per annum. The principal of said bonds was payable, $21,000 annually, and the annual interest on said bonds amounted to $40,372. The ordinance providing for the issuance of the bonds, prescribed the form of such bonds, and their terms and conditions are set out therein, and, among other things, it is provided: "The principal and interest of this bond are payable exclusively out of taxes levied upon the taxable property in said Municipal Improvement District No. 27."

It further appears that the charter of the City of Los Angeles has at all times since July 1, 1925, provided that, "until otherwise provided by ordinance, the City of Los Angeles shall continue to use, for the purpose of municipal taxation, the county system of assessments and tax collection,. and that said City of Los Angeles has not provided any other method, by ordinance or otherwise, for the assessment and collection of the taxes".

It further appears that appellant's property within said district was assessed for $15,030 in the fiscal year 1926–1927 (commencing July 1, 1926, and ending June 30, 1927); that the said assessment was subsequently equalized, corrected and established by the board of supervisors in said county, and became a part of the assessment-roll of the property in the City of Los Angeles assessed for purposes of municipal taxation.

Thereafter, and on August 30, 1926, by ordinance duly passed and adopted, the tax levy for municipal purposes, and for the several interest and sinking funds for the fiscal year, was duly made; that in pursuance of the terms of said ordinance, among other taxes levied, was the sum of $1.90 on each $100 worth of taxable property assessed in said district for the payment of the annual interest and maturing portions of the bonded indebtedness of said district that would become due before time to fix the next general tax levy. The total tax so levied against appellant's property was the sum of $285.56, which was paid under protest, and subsequently this action was brought for its recovery.

It is contended by appellant that the tax so levied was levied contrary to the provisions of the city charter of Los Angeles adopted by the electors of said city May 6, 1924—section 223 thereof providing as follows:

"The board shall each year apportion and set apart out of the revenue funds in the city treasury pertaining to each such municipal works an amount, or amounts, sufficient to pay at maturity all sums coming due in said year for principal and interest upon all outstanding bonds, general or district, issued for the purposes of the works to which such revenue funds pertain, and said amounts shall be transferred forthwith into a special fund in the city treasury to be designated by a name indicating the nature or purpose of such special fund and the works from which said amount or amounts were derived, and the money in such special

fund shall be subject to apportionment by the controller as may be required to make such payments on the principal and interest of said bonds, and for no other purpose. Any interest or increment received on the money in any such special fund shall be paid into such special fund and become a part thereof. The foregoing provisions of this section shall apply to all such bonds now outstanding or hereafter issued, provided, however, that payment out of revenue as above provided on account of principal and interest of bonds issued subsequent to January 1, 1924, for securing water or electric energy from new sources shall be required only to the extent determined by resolution of the board approved by a majority vote of the council prior to the submission to the electors of the city of the proposition of authorizing such bonds. Such resolution shall be subject to amendment only by resolution of said board approved by a majority vote of the council and assented to by a majority of the electors of the city voting on the question of approving such resolution at a general or special election at which such question shall be lawfully submitted."

Instead of following the foregoing provision of the city charter, the bonds were issued and the tax was levied in pursuance of an act of the legislature approved April 20, 1915 (Stats. 1915, p. 99), section 9 of said act providing as follows:

"The legislative body of such city shall, at the time of fixing the general tax levy, and in the manner for such general tax levy provided, levy and collect a tax each year upon the taxable property in such district sufficient to pay the interest on such bonds for that year, and such portion of the principal thereof as is to become due before the time for making the next general tax levy, provided, however, that if the maturity of the indebtedness created by the issue of such bonds be made to begin more than one year after the date of such issue, such tax shall be levied and collected at the time and in the manner aforesaid, each year, sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof on or before maturity. Such tax shall be in addition to all other taxes levied for municipal purposes, and, when collected, shall be paid into the treasury of such city and be used for the payment of the principal and interest on such bonds, and for no other purpose. The

principal and interest on such bonds shall be paid by the treasurer of such city in the manner provided by law for the payment of principal and interest on bonds of such city.''

And appellant contends that because the levy was made as provided in the general law, it was invalid and the tax void.

Appellant insists that the method that should have been followed, and the exclusive method authorized by law in the collection of the principal and interest payments on the bonds of Municipal Improvement District No. 27 was that prescribed by section 223 of the city charter and that hence it should have been permitted, in accordance with its offer, to prove the gross and net receipts of the district for water rates, and that there was on hand sufficient money with which to have paid the amount of principal and interest becoming due in 1926–1927 on said district bonds, if the funds had been apportioned as required by the city charter.

Respondent, on the other hand, urges that because the city adopted the 1915 act as the law under which it would create Municipal Improvement District No. 27, and under the terms of which such district bonds would be and were issued, that the general law provides the exclusive method of procedure with reference to the issuance of such bonds and the raising of the money with which the payment of both principal and interest provided in such bonds is to be made.

Appellant nevertheless insists, with much earnestness, that the charter section, 223, supersedes the Municipal Improvement Act of 1915 because the matters under consideration are ''municipal affairs'', and that the charter having made provision for such municipal affairs, it supersedes the general law and, hence, that the bonds of the district should be paid from the water rates and not from taxes levied and assessed in the district, but section 13 of the Improvement Act of 1915 provides:

''This Act shall not affect any other act, or acts, relating to the same or a similar subject, but it is intended to provide an alternative method of procedure governing the subject to which it relates, but when proceeding under the provisions of this Act, its provisions and none other shall apply.''

While section 37 of the charter, among other things, provides:

"The powers herein granted to the city shall be supplemental, additional and alternative powers to those conferred upon municipalities by general laws of the State of California now or hereafter in force."

■ It is contended by appellant that the effect of holding with respondent in this case would, in effect, work a double taxation upon the occupants of the district, for the reason that the water rate charged to the inhabitants of the district is supposed, under the charter, to take care of the principal and interest of the district bonds, and that the city having fixed a water rate sufficiently high to take care of the principal and interest on the bonds, it would be unreasonable and unjust to levy a tax for the same purpose. But the question of the harshness or injustice of a provision of the city charter that permits a sufficient water charge to raise the money necessary to meet the principal and interest payments to become due on Municipal Improvement District bonds, while at the same time certain of such bonds, by reason of the fact that they were issued under the Improvement Act of 1915, are required to be paid by a tax upon the property in the district, is a question which it would seem proper to submit to the municipal authorities, but with which this court is not required to deal.

*Gadd* v. *McGuire,* 69 Cal. App. 347 [231 Pac. 754, 757], was a case involving the making of public improvements in the city of Los Angeles under a general law instead of under the city charter—the city council having elected in that case to proceed under the general law instead of under the city charter—and the court there said:

"In the instant case the city council elected to exercise the powers which are granted generally to municipalities by the Act in question. In the resolution of intention it expressly declared that the proceedings for the construction of the proposed sewer system shall be made and taken under the City Boundary Line Act. This was tantamount to the adoption of all the provisions of that Act, and was clearly authorized by law. . . . If the legislative body of the City of Los Angeles is supreme in municipal affairs by virtue of the constitutional and charter provisions above referred to, and if without affirmative action on the part of the legislative authority of the city no general law with relation to municipal affairs has any binding effect therein, it is nevertheless true that the legislative body of the city has

524

power to adopt any state law applicable to its municipal affairs, and that in the matter of the issuance of these bonds that was effectually done by the ordinances and proceedings above referred to." (*Cole* v. *City of Los Angeles,* 180 Cal. 617 [182 Pac. 436]; *Barber* v. *City of Los Angeles,* 191 Cal. 253 [215 Pac. 897]; *Hayes* v. *Handley,* 182 Cal. 273 [187 Pac. 952]; *Chapman* v. *Jocelyn,* 182 Cal. 294 [187 Pac. 692].)

The bonds constitute a contract between the bondholder and the taxpayers of the district. Among other things, the contract (bond) contains the provision that "the principal and interest of this bond are payable exclusively out of taxes levied upon the taxable property in said Municipal Improvement District No. 27", and to substitute any other method for the payment of the bond would be to change the express terms of the contract, which is not permissible. (*Merchants Nat. Bank of San Diego* v. *Escondido Irr. Dist.,* 144 Cal. 329 [77 Pac. 937]; *Jeffreys* v. *Point Richmond Canal & Land Co.,* 202 Cal. 290 [260 Pac. 548]; *H. Crummey, Inc.,* v. *Howe,* 48 Cal. App. 542 [192 Pac. 112]; *McBean* v. *San Bernardino,* 96 Cal. 183 [31 Pac. 49].)

The condition of the bonds just quoted is a material part of it, goes to its substance and may not be changed whether the holder of the bonds or some other interested party be the objector.

We are of the opinion that the provisions of the Municipal Improvement Act of 1915 (Stats. 1915, p. 99) are controlling with reference to the tax here involved, and that the tax was a valid tax. It follows, therefore, that the rulings of the court complained of were proper, and that the judgment is correct.

The judgment is affirmed.

Plummer, Acting P. J., and Thompson (R. L.), J., concurred.